Then we would bring in the evidence about what are the circumstances of his employment. That doesn't really answer my question. Was the district judge factually wrong about the information of which she took judicial notice? No, Your Honor. So there is no formal action has been taken by licensing officials against Dr. Babchuk's license? That's correct, Your Honor. Okay. But that brings up the issue which... But aren't you really saying any criticism of a doctor is the impairment of a property right? No, Your Honor. We are not arguing that. Why not? We are arguing that because of the National Practitioner's Database, when you have a report of a disciplinary action, of a peer action, that has a detrimental effect. Why is that different? I mean, suppose some prominent person blogged or something and said that Dr. Babchuk wasn't any good. Would you call that an impairment of a property right? To be criticized by a prominent person? Your Honor, assuming it's a state actor.  Assuming that's a state actor. There is no end. And defamation would give way to suits for deprivation of property. Right? But actually the defamation issues or claims in the context of 1983 actions go to the liberty interest occupation. Now wait a second. Are you going to say all defamation is actionable under the 14th Amendment? No. I'm sorry. But that's how it's analyzed. What? It's analyzed under that. I don't know what you're talking about. Okay. Under the occupation liberty interest. You say his reputation has been damaged because this appears on his file. But that really opens up any defamation suit. Right? No, Your Honor. Under the 14th Amendment. We are not making an argument that his reputation has been harmed. What we are arguing is before this action... His reputation hasn't been harmed. What's his complaint? His license has been affected. Well, what does that matter as long as he's able to practice medicine? You say his reputation hasn't been damaged. So what's the case about? The case is about that the actions of the defendants have rendered that medical license, we say, virtually worthless. But you just said his reputation wasn't damaged. So how could his license be worthless? Well, I was addressing reputation as whether someone... I don't know what you're talking about. ...goes to them. You say his reputation has not been damaged. But his license is worthless. That's nonsense. Your Honor, the reason I was saying his reputation has not been harmed is that when you talk about reputation in the context of a 1983 case, you're not talking about property rights. What we're focusing on is the impact on his license. And in this regard, yes, because of the damage to his license... But any criticism of him could be regarded as reducing the value of his license, right? No, Your Honor, because what happens in this case, when there are reports to the national database of suspension of staff privileges, future employers have to look at that by statute. They have to review that. Can I try to approach... They're going to look... They're going to look him up on the Internet. Anyone who wants to hire... Any company or hospital wants to hire him, look him up. If there are criticisms of him in the Internet, on the Internet, then that's going to hurt him. But you somehow don't regard that as actionable invasion of a property right. I don't see the practical difference between that and its being on this particular database. This gets back to whether or not Reed v. Shorewood is still good law because... Look, you look up any doctor on the web, and you'll be a list of favorable comments about this doctor, unfavorable comments. And I don't see what the practical difference is between having negative comments on a website about you and having the negative experience in this database.  I think you look to the commentaries that we cited in our opening brief that talk about the impact of the national database and the effect that has on someone's license to practice medicine, their ability to practice medicine. Let me try to approach this from a different angle, if I could, Mr. Sifferman. I thought you had agreed at some point in your briefing that a hospital that is a state actor can impose summary suspensions if need be as long as there is a prompt post-deprivation hearing. Is that right? If there's sufficient emergency, a danger to patients, that the Due Process Clause does not require a pre-deprivation hearing if there's a prompt post-deprivation hearing. Is that right? Your Honor, I don't believe that was either discussed in our briefs or in the summary judgment paper. Well, what's the answer? Do you think the Due Process Clause prohibits summary suspension if there's an immediate prompt post-deprivation hearing? It depends if it's a sufficient post-deprivation. Okay. So there's plenty of time after the summary suspension to prevent a report to the National Practitioner Database, right? 30 days? It's a 30-day suspension that triggers the report, right? Yes, Your Honor. Okay. So in essence, it looks to me like the problem is just what processes do. Here, for whatever reasons, I know you think they're bad reasons, but the hospital folks thought there was a very good reason to suspend Dr. Babchuk immediately. They notified him. Does he have a right to a hearing immediately? And did he request it? There was a hearing requested, and it happened later. And it was postponed at Dr. Babchuk's request, correct? Correct. So how is there a deprivation, a denial of due process here if there's an opportunity to be heard promptly, and he then later delays that? Because we believe the evidence will show that it was not, in fact, a fair hearing. It was already a fait accompli. Okay. Well, that starts to sound like a breach of contract claim here, not a due process claim. I know you've got a separate state court action, right? Correct. What's going on with that? It is in the pre-trial stage. It had been dismissed. It was reversed on appeal. Okay. It was recently scheduled for conference. So you're in trial court in Tipton County? Yes. Okay. I guess my basic question here is, given the extent of contractual protections that Dr. Babchuk seems to have, what do you need a federal case for, and what good does this do? We simply are arguing and want to establish that there is a protectable constitutional right not only to your blemish-free license, but staff privileges. And that gives us different kinds of proofs and damages under 1983. Well, if I could follow up a little bit on that, because that gets us into your state action under color of state law questions. If your theory is correct, would you agree that IU Health and IU Tipton would be arms of the state? They would be state actors in the context of what that term means under 1983. Would they be entitled to 11th Amendment immunity? John, I can't address that. It was not brief. Is there any doubt? I mean, that's your theory. Look, the IU trustees are treated as having 11th Amendment immunity. They're sort of at the outer edge of the state for 11th Amendment purposes. But the only way you get action under color of state law is by a chain that links back to the IU trustees as the relevant actors in deciding staff privileges in Tipton County, right? Right. And I think I know, but that doesn't mean that every time a defendant is found to be a state actor, that they necessarily have immunity. Because, like in the Brentwood case in the Supreme Court, because of the involvement of arms of the state. So to answer your question, we're not saying that they would be arms of the state, but they are controlled by arms of the state. So they would not have 11th Amendment immunity. Why not? I mean, I don't understand the – you seem to be trying to have it both ways here. Well, the 11th Amendment only protects the actual state government. You're not contending that anybody here is a local government actor, are you? Correct. Okay. So if you've got a link to the state government, it's through the Indiana University trustees who receive a surprisingly small portion of their budget from the state treasury, but that's for a political debate, okay? But they're entitled to 11th Amendment immunity. Right, and that's why they're not named as defendants. But the organizations that they, in another capacity, operate, are not entitled to the 11th Amendment immunity. I don't understand how they can be acting under color of state law, having nothing to do with local government, and not be entitled to 11th Amendment immunity as corporate entities. Because, Your Honor, in the cases where you have what may look like a private entity, but because of their pervasive enslavement, they become a state actor. That doesn't convert them into 11th Amendment. Look, you've got issues. I mean, the answer, you can split the difference, for example, with some privatized prisons, with some prison health care providers, and so on, that are carrying out government functions. This isn't a government function, not an essentially government function. Well, I've raised the issue. It may not be fruitful to pursue it further, but I would like to ask you a little further about the state action question and see if you wanted to address the State Board of Accounts decision, which treats IU Health as a private entity, not subject to State Board of Accounts, and see if you had thoughts about whether IU Health is subject to the open records laws, public meeting laws, Tort Claims Act, conflict of interest laws, and state ethics laws that apply to employees. Yes, Your Honor. The Indiana Court of Appeals decision that you referenced, that dealt with the interpretation of an Indiana statute on the scope of the auditor to audit books of agencies. Of public entities. Right. So it's a look at how do they define that terminology under the state statute, which is not the same test or even the same analysis that you go through for a state actor. Is there any respect in which IU Health is treated as a governmental actor for purposes of state law? Your Honor, not that I know of. Thank you. Okay. Well, thank you very much, Mr. Sifferman. Ms. Martin? May it please the Court? Dr. Babchuk's argument fails in two respects. He failed to establish he had any constitutional property interest that was impaired, and he failed to establish that IU Health was a state actor, or because it is at least nominally a private entity, acting under color of state law. And to be specific, IU Health didn't act here. It was actually IU Tipton, an affiliate of IU Health as an entity. But on the property grounds, Dr. Babchuk points both to his privileges at Tipton Hospital and to this interest in his medical license. As the Court pointed out, you know, a medical license may enjoy constitutional protection, and the question here is really whether Dr. Babchuk established any deprivation or any harm to his license. It was fully argued in the District Court, although I'll admit we were all focused on state action. But we did point out that Dr. Babchuk's interest in his medical license has not been impaired. And, in fact, based on the 2010 Abkarian v. McDonald opinion in this Court, the interest in the medical license is not sufficient to support a claim against these private defendants who are not the licensing board because they have no authority to take action against his license. And that case specifically addressed the question of whether a National Practitioner Database report, even an allegedly defamatory one in that case, constituted a deprivation of the interest in the medical license and held that it did not. The District Court appropriately took judicial notice of the fact that Dr. Babchuk's license was intact. The federal rules of evidence permit sua sponte judicial notice, and I think the source of this information was appropriate. It was the IN.gov website, and such government websites have been recognized as appropriate sources by this Court for judicial notice. And the rules of evidence also gave Dr. Babchuk the opportunity to respond, as this Court pointed out, or to request the opportunity to respond, which he did not do. But really the Court was just taking further notice of what was already established by the evidence or the lack of evidence in the record of any harm or the fact that the National Practitioner Databank report, which is all he pointed to, does not constitute constitutional harm to that interest. His privileges are a separate property interest he claimed. And here the question is really whether there's property, constitutional property, property in a constitutional sense. And that depends on whether he had any substantive entitlement to the continuation of these privileges. And that looks to whether there were rules or mutually explicit understandings that led him to believe these privileges would continue unless XYZ conditions were met. And the Medical Staff Bylaws and Indiana Peer Review Act are the two sources he points to, but neither of those sources create any substantive entitlement to the continuation of the privileges for him to remain on the medical staff. Privileges are typically granted for a two-year period. Is that right? The privileges here are reviewed every two years. The bylaws themselves do make clear that even within that the duration of privileges, they refer to it as not being contractual because the privileges are dependent on the continual justification of the exercise of those privileges. Well, let me put it this way. Is it your position that the hospital can simply terminate a doctor's privileges at will? I'll say virtually. What we see in the bylaws is both the base proposition that there is no entitlement to the privileges, that it's dependent on the continued justification, and then when we look at the provisions of the bylaws that give the hospital the right to take away those privileges through summary suspension or corrective action, we're looking for whether there's any substantive limits in those provisions. And the court pointed out that there is a summary suspension provision. It actually goes even farther than permitting summary suspension only in the case of danger to patients. It says that privileges may be summarily suspended any time it's in the best interest of patient care. And when you look at why corrective action might be initiated, there's a list of circumstances that should warrant corrective action. And then it says corrective action may be initiated whenever corrective action against a practitioner is necessary or advisable. And this is broad discretion. I'll put it that way, broad discretion. Sure, but I listen to that, and that all sounds to me like it's at least comparable to good cause. And we know that if we put aside the state action question for a moment, if we've got a public employee who can be terminated only for good cause, then that person is treated as having a property interest entitled to a hearing, et cetera. So why doesn't that rationale apply to this notion of corrective action? Well, and I have to disagree with you that this is language comparable to other situations where we have a just cause for termination type provision. I think those are situations where it is expressed and mutually explicit. If X, Y, Z happen, we can take your tenure or your employment or whatever it may be away. This is a situation where you have general and vague standards, if you want to call them that, as to when this might occur. I think there could reasonably be different understandings, not mutually explicit understandings, as to what circumstances might justify that. And those general and vague standards have been rejected by this court in other contexts as creating any constitutional entitlement. That was in a reappointment context, but looking at very similar standards in medical staff bylaws from another hospital. How about just good cause? Well, that language doesn't appear in the bylaws. No, but it's pretty vague, and it's sufficient in the employment context, right? Just cause, good cause. I understand that for cause termination is typically defined. I honestly, I can't tell you whether there's a case that has found simply the language for cause to be sufficient to create a constitutional property interest. Now, as opposed to a breach of contract or some other claim, but to elevate it to the right of a constitutional claim, this court has rejected general and vague standards like that in the past in similar circumstances and has generally expressed doubt about even midterm whether privileges should be viewed as comparable to tenure in this situation as to whether they might be a protected property right. And certainly, Dr. Babchuk's theory that procedure equals property has been rejected by the court several times. It matters whether you have the substantive entitlement before you are entitled to the constitutional procedure rights. Well, on that point, is the language from that old case that's mentioned in the Abkarian case more recently about the right to a blemish-free medical license overbroad? I think Abkarian clarified that language. So that language originated in the Flurry v. Clayton case, which was a case brought against a licensing board. A licensing board, right. And the Abkarian court then clarified, I believe, that that interest is applicable in a case against the entity with authority to impose such a constitutional blemish. And Abkarian clarified that a constitutional blemish then is truly action against the license. My question goes to whether this whole idea of a constitutional blemish is tenable as a matter of due process law. Well, I think it could be if this case was pending against the Indiana licensing board. And if the licensing board had imposed discipline without due process, I think that's the type of constitutional blemish that was referred to in Flurry. Imposed discipline. In other words, revocation, suspension. Against the license. But constitutional blemish is not really a concept that I can get my head around in terms of a standard by which to determine whether there's a protected property interest or not. As far as whether that is a sufficient definition of what might constitute a jeopardy. The law requires a substantive entitlement. Right. An entitlement not ever to have anything bad said about you in your personnel file. Which is what I think the most we can say about what it means to have a blemish free license. If I could approach that in the law, we're used to one form of discipline imposed against attorneys from time to time is a public or private censure. I wonder if that might be comparable. I certainly would be troubled if a public censure could be issued by an attorney licensing board without a hearing and an opportunity to be heard. And I think that that is the type of blemish that is recognized against the entity that has the authority to enter that type of discipline. We're actually talking about two things here, though. We're talking about discipline entered against a license versus the suspension of his privileges at the hospital, which does trigger this report that goes to the agency that could enter that constitutional blemish on his license, if you want to call it that, but has been found insufficient. If we're analogizing to attorney discipline, this would be more of an internal reprimand by your employer or a report that doesn't lead to discipline by the agency that actually has authority to take action against the license. But either way, I think that Dr. Babchuk has not established in either his license or his privileges a constitutional property interest at issue here. Okay. Thank you, Ms. Martin. So, Mr. Sifferman, your time expired, but you can have a couple of minutes if you have something interesting. Thank you, Your Honor. I just wanted to address an issue that the judge asked about, can staff privileges ever amount to a protected property right? And this court in the Limb versus Central DuPage Hospital Court, I think said yes, although it didn't directly say it. That case involves someone whose staff privileges were not renewed. And this court said, okay, for a substantive property right, you don't have a substantive property right if it has unfettered discretion attached to it. So whether or not someone gets their staff privileges renewed is absolute discretion by the hospital. In that case, therefore, there was no property right. Could you name that case again, please? Limb, L-I-M-B. Central DuPage Hospital, 871 F 2nd 644. This court also said if the doctor's staff privileges have been terminated in the middle of his first year or during any of his annual reappointments, he could argue that he had deprived the property right. Because during that stage... Why should it matter whether a hospital is owned by the state or private? Well, if it's completely private and does not qualify as a state actor, then 1983 doesn't apply. I'm just asking you, what is the sense of distinguishing between a private and a state hospital? Just a stupid rule or is there some sensible basis for it? They're just the same, right? There's no difference between state and private hospitals. Why should they be under a different legal regime? Congress decided that they would pass Section 1983 to... Well, wait a second. Section 1983, that's 19th century, right? Well, it's right now... They didn't decide anything about the 21st century. The issue is are they a state actor? I just don't get it. I wonder if there is a practical difference, some reason why the state hospital should be under a different legal regime, constitutional regime, from a private hospital. Yes, because under our Constitution... No, no, a practical reason. Practical reason? I mean, the law is supposed to make sense and not just be a bunch of totally arbitrary rules, right? But different rules apply to the state. But you'd like to think there's a reason. That's what I'm asking. Is there a reason? Is there a reason for treating state and for giving doctors in state hospitals more legal protection than doctors in private hospitals? Yes, because the state has obligations as the sovereign. Sovereign. Thank you. Okay, thank you, Mr. Zifferman, Ms. Martin. Next case for argument is Crockett v.